UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID T. JACKSON,

      Plaintiff,                                  Case No. 18-14009
                                                Hon. Denise Page Hood

v.

THE CITY OF DETROIT, et al.,

      Defendants.

_____/

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR RELIEF FROM ORDER [#67]**

## I.    INTRODUCTION

Plaintiff David Jackson filed this action in the Third Judicial Circuit, Wayne County, on October 26, 2018.  Defendants removed it to this Court on December 21, 2018.  Plaintiff alleged that Defendants: (1) violated his rights pursuant to 42 U.S.C. § 1983 and 1985 (Count I); (2) maliciously prosecuted him (Count II); (3) falsely arrested and imprisoned him (Count III); and (4) were grossly negligent (Count IV).

On September 30, 2022, the Court granted in part and denied in part Defendants' Motion for Summary Judgment. ECF No. 65. Specifically, the Court: (1) denied the Motion for Summary Judgment with respect to Count I and III; (2)

granted the Motion for Summary Judgment with respect to Count IV; and (3) granted the Motion for Summary Judgment with respect to the state law malicious prosecution claim and the federal malicious prosecution claim against Defendant Pierce in Count II but denied the Motion for Summary Judgment with respect to the federal malicious claim as to the remaining Defendants. All terms defined in the September 30, 2022 Order shall have the same meaning in this Order.

On October 28, 2022, Defendants filed a Motion for Relief from Order [ECF No. 67]. The Court ordered Plaintiff to file a response, and Plaintiff timely filed a response. For the reasons that follow, the Motion for Relief from Order is denied.

## II.    ANALYSIS

### A. Court's Misunderstandings of Fact and Law

Defendants first assert that the Court erred in five different ways and that "the Court's Order rested on misunderstandings of fact and law." ECF No. 67, PageID.827.

> *1.  The Court mistakenly believed a "show-up" identification procedure was used to identify Plaintiff as a suspect.*

Defendants claim that the Court erroneously believed a single photograph of Plaintiff was shown to the victim at the scene and that the photographic identification was used to support Plaintiff's arrest. Defendants are mistaken.

In a motion for summary judgment, the Court must view the evidence in a light most favorable to Plaintiff.  The evidence submitted to the Court reflects that one or more of the officers (Sage and Smith), who were with the victim (KR) at the scene of the alleged crime, radioed to the officers who stopped Plaintiff.  Sage and/or Smith asked the officers with Plaintiff to take a picture of Plaintiff and send it to Sage and/or Smith.  An officer who was participating in the stop of Plaintiff took the requested picture and sent it to Sage and/or Smith.  The Court finds that such facts, in a light most favorable to Plaintiff, support the inference that the officers with KR (Sage and Smith) requested the photo for the purpose of showing KR the photo, the officers did show the photo to KR, and such conduct violated DPD policy.

The Court did not, however, as Defendants argue, state, find, or hold that the photograph(s) of Plaintiff taken at the time he was stopped on the street was a basis for his arrest.  Nor was the Court's conclusion that Defendants were not entitled to qualified immunity with respect to the taking and use of the photo at issue "critical to the Court's Order;" rather that was a single, isolated determination amidst at least 10 pages of analysis.  The critical part of the Court's Order was the analysis and conclusion that "Defendants did not have probable cause to take any action beyond a *Terry* stop." ECF No. 65, PageID.805.   The Court made that

determination because "he (Pierce) had already concluded that Plaintiff was not the suspect," *id.* at PageID.800, and "Plaintiff did not match any of the critical features of the suspect that had been reported." *Id.*

The Court declines Defendants' invitation to amend its ruling regarding the single photo "show up."

> *2. The Court mistakenly believed Plaintiff did not match any of the features of the breaking and entering suspect other than being a black male*

Defendants' heading mischaracterizes the Court's statement in the Order.  In the Order, the Court found "it significant that, other than being a black male, Plaintiff did not match any of the **critical features** of the suspect that had been reported." ECF No. 65, PageID.800 (emphasis added).  In the body of their motion, Defendants recognize that the Court stated "critical features."

Defendants argue that there were two other critical features of Plaintiff that matched the suspect: (1) Plaintiff was wearing a black hooded sweatshirt; and (2) Plaintiff matched the age description.  The Court notes that, at the time officers stopped Plaintiff, the victim: (a) had indicated that the suspect was wearing "all black" (the Court notes that Plaintiff was wearing light colored pants); (b) had not mentioned a hoodie; and (c) had not indicated an age range.  Even if the victim had

previouslymentioned an age range and the black hoodie could be considered wearing "all black," neither of those features would be critical or distinguish Plaintiff from many other men.  If, however, he was wearing a "black and white Yankees baseball cap" or had "yellowish teeth, with a goatee and an earring," those details would have been critical features.  But, none of those distinguishing features applied to Plaintiff when he was stopped.

The Court finds Defendants' critical features argument to be little more than an effort to rehash Defendants' contention that there was a sufficient basis to stop and detain Plaintiff and then run a LEIN check on him.  The Court denies Defendants' motion for relief based on their critical features argument.

### 3. *The Court did not apply the* <u>Coogan</u> *standard to all of Plaintiff's claims*

Defendants contend that the Court engaged in its own probable cause analysis when it was bound to adhere to the finding in a criminal case that there was probable cause.  Citing *Coogan v. City of Wixom*, 820 F.2d 170, 175 (6th Cir. 1987).  Defendants assert that Plaintiff alleges in all of his claims that there was something improper with the investigation or arrest of Plaintiff.  Defendants therefore argue that Plaintiff is barred by *Coogan* from raising those issues, such that all Plaintiff's claims should be dismissed.  The Court does not agree.

5

First, Defendants notably fail to cite any language from *Coogan* in their motion for relief from order.  Second, as the Court stated in its Order, the *Coogan* court held that "where the state affords an opportunity for an accused to contest probable cause at a preliminary hearing **and the accused does so**, a finding of probable cause by the examining magistrate or state judge should foreclose relitigation of that finding in a subsequent § 1983 action." *Id.* (emphasis added).  Third, and very significantly, Defendants fail to note that the *Coogan* court expressly stated that a finding of probable cause in a state court proceeding is **not** automatically preclusive of a challenge to probable cause in a subsequent Section 1983 action such as this one. *Id.* ("We do not hold that every determination in a preliminary hearing should be given preclusive effect in a subsequent § 1983 action.").  As the *Coogan* court recognized, "[s]ome preliminary hearings are little more than formalities. Also, even when an opportunity for full adversary proceedings is afforded, strategic concerns may counsel against engaging in such an exercise at the early stages of a criminal proceeding." *Id.*

Defendants have offered no evidence (or argument) that Plaintiff contested probable cause in the state court proceeding.  The Court also finds, again, that Plaintiff's challenge to probable cause in this matter stems from, but is not limited to, his detention after the initial *Terry* stop.  Plaintiff should have been released

6

once Pierce determined Plaintiff was not the suspect being sought for the home invasion ("nope it's not him") and advised another officer to get Plaintiff's name for the report and release Plaintiff.   Although one could argue that Plaintiff's counsel in the state court criminal proceeding should have filed a motion to suppress based on the officers' actions after the *Terry* stop or challenged the existence of probable cause for his arrest based on the absence of the features described by the victim (other than being a black male), the Court has no reason to believe any such challenges were filed.

Accordingly, the Court rejects Defendants' contention that Plaintiff's claims were barred by the finding of probable cause in the state court criminal action.

> 4. *The Court mistakenly believed Plaintiff pled a malicious prosecution under the federal standard.*

Defendants allege that the Court assumed Plaintiff pleaded his malicious prosecution claim under the federal standard. Citing ECF No. 65, PageID.805-06. Defendants assert that assumption was erroneous Plaintiff had pleaded a malicious prosecution claim only under the state standard.  The Court finds that Defendants are mistaken.

Plaintiff did not specify at Count II (Malicious Prosecution Against All Defendants) whether the claim was a state law or federal law claim.  In the preamble of his Complaint, however, Plaintiff alleged:

Defendants, . . . individually and collectively, acted in concert to deliberately deprive Plaintiff of his civil rights secured by the United States Constitution (4th, 5th and 14th Amendment) and the Michigan Constitution, . . . when they falsely arrested, falsely imprisoned and maliciously prosecuted Plaintiff . . ."

ECF No. 1-1, PageID.8 (at ¶ 5).

Similarly, in Plaintiff's brief in response to Defendants' motion for summary judgment, Plaintiff repeatedly stated that the malicious prosecution claims were brought pursuant to federal and state law. *See* ECF No. 56, PageID.537 ("Plaintiff brought these claims against Defendants alleging violation of his constitutional rights under the United States Constitution pursuant to 42 U.S.C. § 1983, as a result of the malicious prosecution, . . ."); PageID.538 ("***In addition to federal violations***, Plaintiff alleges that individual Defendants Pierce, Sage, Smith, and Buscemi are liable to Plaintiff for malicious prosecution . . .") (emphasis added); PageID.569 ("Individual Defendants Pierce, Sage, Smith and Buscemi Are Liable to Plaintiff **Under Federal and State Law Claim For Malicious Prosecution** . . .") (emphasis added).  For these reasons, the Court identified both the federal and state standards for establishing a malicious prosecution claim in its Order. *See* ECF No. 65, PageID.805-07.

The Court denies Defendants' argument that the Court mistakenly believed that Plaintiff pleaded a malicious prosecution claim under the federal standard.

5. *The Court mistakenly believed Defendants wrongfully withheld evidence in violation of Brady*

Defendants believe that the Court mistakenly concluded that Defendants withheld evidence, and any of the Court's rulings that depended on that belief must be reconsidered.  Defendants suggests that the Court must have misunderstood how incident reports function, and that there is no evidence that Defendants withheld this information because the relevant document was provided to the prosecutor.

Defendants' argument fails to take into account that the Court must view the evidence in a light most favorable to Plaintiff.  Plaintiff has submitted evidence that: (a) Plaintiff (his criminal counsel) did not receive the narrative report(s) of Pierce and Hume during the criminal proceedings; and (b) the date the report(s) was/were printed was approximately a month after Plaintiff's criminal counsel was provided with criminal discovery.  Although Defendants contend that it was the prosecutor who failed to provide such report(s), Defendants have not established that it is undisputed that the report(s) were turned over to the prosecutor in a timely manner *vis a vis* the underlying criminal case.

The Court therefore denies Defendants' assertions that: (1) the Court mistakenly believed that Defendants withheld evidence; and (2) the Court's rulings must be reconsidered accordingly.

## A. Liability of the City of Detroit

Defendants next contend that the Court did not clearly rule in the Order whether the City of Detroit may be liable in this cause of action and for what claims. Defendants further contend that if the Court intended to deny the motion for summary judgment *vis a vis* the City of Detroit, it should reconsider its ruling in light of Defendants' arguments above.

Defendants are correct that the Court did not explicitly rule on whether the City of Detroit should be dismissed with respect to any or all of Plaintiff's claims (other than the claim for gross negligence in Count IV, which was dismissed as to all Defendants). The Court therefore now rules on the viability of Plaintiff's claims against the City of Detroit.

The Court first concludes that the City of Detroit has governmental immunity from Plaintiff's tort claims under state law. *See* M.C.L. § 691.1407 ("Except as otherwise provided in this act, a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function."). Plaintiff did not respond to this argument generally, and Plaintiff has not identified any exceptions to governmental immunity that might apply in this case. *See* M.C.L. § 691.1401 *et seq*. Accordingly, as to the City of Detroit, the Court dismisses the state law component of Plaintiff's malicious

prosecution and false arrest/false imprisonment claims in Counts II and III, respectively.

With respect to the federal law components of Counts I, II, and III, the Court concludes that Plaintiff has a viable action against the City of Detroit on each Count based on the City of Detroit's policies and customs, as well as its failure to train police officers, all of which could amount to deliberate indifference to the rights of persons with whom the police come into contact. *Canton v. Harris*, 489 U.S. 378, 388 (1989). A policy or custom may consist of: (a) the municipality's legislative enactments or official agency policies; (b) actions taken by officials with final decision-making authority; (c) a policy of inadequate training or supervision; or (d) a custom or tolerance or acquiescence of federal rights violations. *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The question is "whether the training program is adequate; and if it is not, the question becomes whether such inadequate training can justifiably be said to represent 'city policy.'" *Harris*, 489 U.S. at 390.

The Court finds that Plaintiff has submitted sufficient evidence that the City of Detroit had a custom or policy (and/or failure to train its officers) that led to a deprivation of his rights. *See* ECF No. 65, PageID.809-10. As the Court has held that Plaintiff has viable Section 1983 claims against individual defendants,

Defendants' argument that Plaintiff's *Monell* claims must be dismissed because there was no violation of Plaintiff's constitutional rights holds no weight.

Specifically, the Court finds that there is evidence to create a genuine dispute of material fact as to whether: (a) the practice of taking pictures of detainees, before probable cause is established, is a violation of due process and may taint eyewitness identification in violation of the detainee's rights; (b) Buscemi's method of presenting the photo array to KR was deficient because Buscemi created the photo array and presented it to KR, when it is widely recommended within Michigan (and nationwide) that a separate, independent person present the photo array to a witness (the double-blind method); (c) a municipality should provide officers with training on photo array and live lineup administration, and there is evidence that the DPD did not train, supervise, or adopt eyewitness identification procedures that follow the best practices recognized throughout Michigan and the United States; and (d) officers utilized a single photo show-up.

Evidence to support the failure to train includes, but is not limited to, Buscemi's testimony that he: (1) only learned of the double-blind procedure for presenting a photo array in preparation for his deposition; (2) was unfamiliar with a blind procedure; (3) had not received any training on administering a photo array;

and (4) had only experience with a few photo arrays as of November 2017. ECF No. 56, Ex. 6 at 12-13.

Buscemi also testified that he was not familiar with (and had not been trained about) the best practices described above, including using a separate administrator for presentation of the photo array, recording the photo array by audio or video, or presenting the photos in separate folders in sequential order. *Id.* at 19-21. The Court finds that this evidence could support a claim for failure to train by the City of Detroit (DPD). *Harvey v. Campbell Cnty., Tenn.*, 453 F. App'x 557, 567 (6th Cir. 2011) (quotation omitted).

## B. Adjourn Trial

Defendants also asked that the Court adjourn trial in order to consider their motion for relief from order. As the Court previously adjourned the scheduled trial date, this request is denied as moot.

## III.   CONCLUSION

For the reasons stated above,

IT IS ORDERED that Defendants' Motion for Relief from Order [ECF No. 67] is GRANTED IN PART and DENIED IN PART.

IT IS FURTHER ORDERED that Plaintiff's claims in Counts I and III remain as to Defendants Fabio Buscemi, Bradley Clark, Julian Sage, Wendell Smith, James Pierce, and Justin Lyons.

IT IS FURTHER ORDERED that Plaintiff's state law claims in Counts II are dismissed and Plaintiff's federal law claims in Count II remain as to Defendants Fabio Buscemi, Bradley Clark, Julian Sage, Wendell Smith, and Justin Lyons (but is dismissed as to Defendant James Pierce).

IT IS FURTHER ORDERED that the state law component of Plaintiff's claims in Counts II and III are dismissed as to Defendant City of Detroit, but the federal law component of Plaintiff's claims in Counts I-III remain as to Defendant City of Detroit.

IT IS FURTHER ORDERED that Count IV is dismissed as to all Defendants.

s/Denise Page Hood
DENISE PAGE HOOD
Dated: May 2, 2023                    UNITED STATES DISTRICT JUDGE

14